**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ELI BETHEA, | : | |
| | : | |
| Petitioner, | : | Civil No. 12-1689 (PGS) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ATTORNEY GEN. OF N.J., | : | |
| | : | |
| Respondent. | : | |

**SHERIDAN, DISTRICT JUDGE**

Petitioner Eli Bethea ("Petitioner"), a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.   For the reasons stated herein, the Petition will be denied on the merits.

## I. BACKGROUND

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1)[1], will recount salient portions of the recitation of facts as set forth by New Jersey Superior Court, Appellate Division, on direct appeal:

> The facts underlying the charges brought against defendant first surfaced when Eckerd Drug Store in Ewing Township advised the police, on January 29, 2001, about photographs it developed from a disposable camera.   The disposable camera was dropped off for development by a John Goss who provided an address of …. in Trenton.   While they are not contained in the record on appeal, testimony at trial revealed that the twenty-seven photographs contained images of two black men who were depicted tormenting and threatening
>
> a naked black male. In some of the pictures, there was a gun either

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

in his mouth or pointed towards him.   In some of the pictures, he had duct tape. You could see duct tape around the mouth, the head, around the mouth.

The bound person in the photographs had welts and bruises on his legs and back, burn marks on his hips, and blood on his left arm. The scene depicted in the photographs appeared to have occurred in a kitchen.   Visible in the photographs were "pieces of stereo equipment," a bottle of bleach, a case of Corona beer, a sheet over a window, and a wire hanger.

The police staked out the drug store but the photographs were picked up at a time when the police were not present.   Following this, Detective McMillan went to the address given by John Goss. Instead of finding Goss in the area, the detective saw an individual (later identified as defendant) he recognized as one of the persons threatening the bound individual in the photographs. The detective asked defendant for identification. Defendant gave as his address…Because the detective had not yet located the victim in the photographs, he did not question defendant at that time. The next day, Detective McMillan showed the photographs to other detectives, one of whom recognized one of the persons in the photographs as Emanuel Ross.

Based on his familiarity with buildings in the area and the floor plan of the premises depicted in the photographs, Detective McMillan believed the photographs may have been taken in local public housing.   He walked around the Donnelly Homes area, hoping to identify the sheet drawn over the window in the photographs because it had a "very distinctive pattern."   Luckily, Detective McMillan did locate this sheet in a window in apartment 2C of the same building which defendant gave as containing his apartment.

A Trenton Housing Authority officer advised Detective McMillan that apartment 2C had been vacant for a few weeks and allowed him entrance.   Detective McMillan observed that apartment 2C compared favorably to the apartment in the photographs.   In addition, the detective saw the same table and bottle of bleach depicted in the photographs, as well as blood stains, a ball of duct tape, and a box for a disposable camera.

Based on this information, warrants were issued for the arrest of defendant and Ross.   Ross was arrested on February 6, 2001 and, after questioning, identified the victim as Jerome Garrison.

The police also spoke with Garrison on February 6, 2001.   He had visible facial injuries and also showed the police burn marks on his right arm, scarring on his chest and abdomen, a burn on his left thigh, and other injuries.   Photographs of these injuries were taken that day.

Defendant was also arrested on February 6, 2001.   He was questioned by Sergeant

Gonzalez who later testified that when he showed defendant the photographs that were obtained from Eckerd, defendant's reaction "initially was that of one who was stunned, just shocked at the fact that we had the photos." Defendant then "indicated that this was done as a result of Mr. Garrison owing Emanuel Ross some money," and that when he arrived at the apartment, Garrison was already tied up. Defendant eventually gave a formal written statement containing the following description:

> When I got there, he was tied up. He was questioned about the money that he owed. He was beaten with a belt. He got hot water thrown on him and he got his hair cut off. After I came in I seen Emanuel asking him [what] would it take for this to happen for you to get my money. The guy replied just let me make a phone call. The guy was then asked several times, like is this what it takes for me to get my money. The guy replied No just let me make one phone call. Emanuel said how is a phone call going to change the situation. After that the guy was left alone for a minute, while Emanuel decided what he wanted to do, did he want to let him go or not, or did he just want to wait until the guy could get the rest of the equipment. After Emmanuel figured that he had done enough damage to the guy, that's when he let the guy get dressed and all that. After he let the guy get dressed, Emanuel was asking the guy for the money or the equipment. The guy then said I will give you the equipment. After that Emanuel let the guy go, figuring he would get the rest of the equipment. It took a few days but Emanuel got the rest of the equipment. It was agreed that through the equipment the squabble over the cash would be settled.

Defendant said that he knew the victim's name "begins with a J," and identified the apartment where the incident occurred...

Defendant stated that he and Ross "took turns" beating Garrison with a belt, but that it was Ross who threw hot water and bleach on Garrison, who heated the hanger on the stove to place against Garrison's body, and who used clippers to cut Garrison's hair. Defendant also acknowledged that they used a nine millimeter handgun and took photographs with a disposable camera. He also indicated that Garrison was not a willing participant and was kept against his will for approximately four hours.

*State v. Bethea*, No. A-6547-01T3 (N.J. Super. Ct. App. Div. May 13, 2004).

A jury convicted Petitioner of first-degree kidnapping, N.J.S.A. 2C:13-1(b); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4); second-degree

possession of a firearm for unlawful purposes, N.J.S.A. 2C:39–4(a); third-degree possession of weapons for unlawful purposes, N.J.S.A. 2C:39–4(d); and fourth-degree unlawful possession of weapons, N.J.S.A. 2C:39–5(d).   *State v. Bethea*, No. A-3475-08T4, 2010 WL 5347700, at *1 (N.J. Super. Ct. App. Div. Oct. 28, 2010).   The court sentenced Petitioner to a twenty-five year prison term with an 85% period of parole ineligibility on the first-degree kidnapping conviction, a consecutive eight-year prison term on the second-degree aggravated assault conviction, and a concurrent eighteen-month prison term on the fourth-degree weapons conviction.   *Id.*   The Appellate Division affirmed the sentence and conviction.   *State v. Bethea*, No. A–6547–01T3 (N.J. Super. Ct. App. Div. May 13, 2004).   It is unclear from the Petition whether Petitioner actually filed a petition for certification with the New Jersey Supreme Court.[1]   On October 15, 2002, Petitioner filed a post-conviction relief ("PCR") petition, which was amended in August 2004 and again in August 2006.   *State v. Bethea*, No. A-3475-08T4, 2010 WL 5347700, at *1 (N.J. Super. Ct. App. Div. Oct. 28, 2010).   The petition was denied on July 31, 2008 and the Appellate Division affirmed the denial.   *Id.*   The petition for certification to the New Jersey Supreme Court was denied on March 16, 2011.   *State v. Bethea*, 15 A.3d 21 (N.J. 2011).

On March 19, 2012, Petitioner filed the instant Petition.   (ECF No. 1.)   He raises the following grounds for relief:

(1) Petitioner was denied his sixth amendment right to effective counsel at trial.

(2) Petitioner was denied his right to confront his accuser, in violation of the Sixth Amendment when the victim in this case failed to testify.

(3)  Petitioner was denied his right to due process, in violation of the Fourteenth

---

[1] Petitioner's counsel states that a petition for certification was denied by the New Jersey Supreme Court on March 16, 2011, however based on the timing, it appears that the denial for certification was related to Petitioner's post-conviction relief petition, not his direct appeal.   (Pet. ¶ 9(g)(4).)

Amendment, when the trial court failed to give a "*Clawans*" charge[2] to the jury.

(4) Petitioner was denied his Sixth Amendment right to a fair trial when the judge sentenced him to 25 years on the kidnapping charge but sentenced his co-defendant to only 15 years.

## II. DISCUSSION

### A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> . . .
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . .

28 U.S.C. § 2254.

"§ 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011);

---

[2] A *Clawans* charge, *State v. Clawans*, 183 A.2d 77 (N.J. 1962), permits an adverse inference to be drawn from the non-production of a witness in certain circumstances. *State v. Hickman*, 499 A.2d 231 (N.J. Super. Ct. App. Div. 1985)

*Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014).   Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."   *Id.*

A federal court's authority to grant habeas relief is further limited when a state court has adjudicated petitioner's federal claim on the merits.   *See* 28 U.S.C. § 2254(d).[2]   If a claim has been adjudicated on the merits in state court proceedings, this Court "has no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"   *Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).   However, when "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA . . . do not apply."   *Lewis*, 581 F.3d at 100 (quoting *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.   *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's]

---

[2] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009) (quoting *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009)). "Section 2254(d) applies even where there has been a summary denial." *Cullen*, 131 S.Ct. at 1402. "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." *Id.* (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)); *see also Johnson v. Williams*, 133 S.Ct. 1088 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted").

decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 132 S.Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. However, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011) (quoting *Williams,* 529 U.S. at 410). "If this standard is difficult to meet—and it is—that is because it was meant to be." *Burt v. Titlow*, 134 S.Ct. 10, 16 (2013) (citations and internal quotation marks omitted). The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen*, 131 S.Ct. at 1398.

**B. Analysis**

**1. Ineffective Assistance of Counsel (Ground One)**

In his first ground for habeas relief, Petitioner alleges that counsel was ineffective on

several occasions. Specifically, Petitioner alleges that at a status conference on May 6, 2002, counsel did not explore whether Petitioner's co-defendant, Ross, would take the Fifth Amendment rather than testify and counsel failed to ask the court to delay the trial until Mr. Ross "could be dealt with." (Pet. ¶ 12.) At trial, counsel failed to object when Detective Maruca, in response to a question about description of the person picking up the photos, said the photo processing unit person said he was a "crack head". (*Id.*) Counsel failed to make objections during Det. McMillan's testimony about blood on the floor and about a bleach bottle. (*Id.*) Counsel failed to request an adjournment so the victim, Mr. Garrison, could be found to testify and failed to request a closed circuit television set-up for Mr. Garrison to testify when he refused to appear in person. (*Id.*) Counsel "could have asked to speak to Det. Fox to determine if the defense want to call him as their witness." (*Id.*) Finally, counsel should have asked for a mistrial when the court actually knew that Mr. Garrison would not testify. (*Id.*)

**a. State Court Proceedings**

When rejecting those claims, the PCR court engaged in a thorough analysis of Petitioner's ineffective assistance claim:

> Here, no evidence was shown that would indicate trial counsel was ineffective, in fact just the opposite seems to be true. First, the record reflects that Mr. Gleason made various motions to have defendant's statement suppressed, before trial. Trial counsel also made all the appropriate motions following the conclusion· of the trial, after the defendant was convicted. Mr. Gleason made motions for a new trial and for judgment of acquittal. It is not trial counsel's fault that all of these motions were denied. The State decided to try Mr. Bethea first instead of the co-defendant Ross which decision was approved by the trial court.
>
> Here, the defendant was facing a staggering amount of evidence against him. First and foremost were the pictures which depicted the torture that Mr. Garrison endured at the hand of the defendant and Mr. Ross. The defendant is seen in the photos. Additionally there were the defendant's own statements made to the police about what occurred on January 27, 2001. There was also all of the physical evidence recovered from the scene of the crime. The instruments used to burn Mr. Garrison,

the coat hanger and pot filled with boiling water.

Defendant's arguments that Mr. Gleason's failure to object to Detective McMillan's testimony that the stains found in the apartment were blood, these arguments are without merit.   Trial counsel cross-examined Detective McMillian extensively on this topic and the conclusion that the pictures contained blood....

The argument pales in view of the overwhelming evidence of guilt.   The fact that defense counsel did not object does not support a claim of ineffective assistance of counsel.   Mr. Gleason obviously made a tactical choice to use this information during cross examination and also to reinforce the point in his closing argument. Defense counsel objected and argued against the admission of photos S-18 through S-28. The Court considered the arguments and overruled the objection and admitted photos taken of the victim.   The court's decision was affirmed on appeal by the Appellate Decision.

Defense counsel also sought and argued for a *Clawans* charge as a result of the State not producing the victim in its case.   He lost that argument and the decision by the Court was affirmed by the Appellate Court.

...

Adequate assistance of counsel is measured according to a standard of "reasonable competence", i.e. whether counsel has professional' skills comparable to other practitioners in the field.   *State v. Fitz*, 105 N.J. 42, 53 (1987).   The mere failure of counsel's trial strategy does not render counsel ineffective.   Defendant has the burden of proving that counsel was in fact below the standard of "reasonable competence" in this trial performance.   Additionally, defendant must prove that as a result of trial counsel's ineffectiveness or deficiency, there is a reasonable probability that the outcome of the trial would have been different.

The defendant has failed to meet either prong of the *Strickland* test.   The facts as they are presented in this motion for Post Conviction relief do not support any finding of ineffective assistance of counsel that would require a testimonial hearing under *State v. Preciose*, 129 N.J. 51 (1992).

*State v. Bethea*, No. 01-06-0734 (N.J. Super Ct. Law Div. July 31, 2008).

On PCR appeal, the Appellate Division affirmed the lower court.   The Appellate Division found that most of Petitioner's claims did not warrant written discussion; however it addressed two points relating to Petitioner's claims:

First, we address the assertion that trial counsel was ineffective in failing—at the

time the cases against defendant and Ross were severed or any time prior to the trial of his case—to argue that the Ross case should have proceeded first because he intended to call Ross as a witness in his case but was thwarted because of Ross's continued right to assert his Fifth Amendment rights. Even if we were to assume that trial counsel should have urged a different ordering of the severed trials, defendant failed to provide to the PCR judge a sworn statement from Ross as to the testimony he would have been willing to provide had he not relied upon his Fifth Amendment right; that failure warranted a rejection of this argument. *See State v. Cummings*, 321 N.J.Super. 154, 170, 728 A.2d 307 (App.Div.), *certif. denied*, 162 N.J. 199, 743 A.2d 852 (1999).

We also reject defendant's argument that the PCR judge misunderstood his function in ruling on the petition. In that regard, defendant argues that his PCR petition was rejected not on its merits but because the PCR judge viewed the State's evidence was "staggering" and "overwhelming." Defendant took the judge's comments out of context. The judge's statement about the weight of the evidence, which was certainly justified in light of the photographs of the crimes and defendant's confession, was intended to explain that, even assuming that trial counsel committed errors, defendant failed to demonstrate the second prong of the *Strickland/Fritz* test: "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Allegro*, 193 N.J. 352, 366, 939 A.2d 754 (2008) (quoting *State v. Loftin*, 191 N.J. 172, 198, 922 A.2d 1210 (2007)).

*State v. Bethea*, No. A-3475-08T4, 2010 WL 5347700, at *2 (N.J. Super. Ct. App. Div. Oct. 28, 2010).

**b.** *Strickland* **Standard**

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *See Strickland*, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of

reasonableness." *Id.* at 687-88. "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen*, 131 S.Ct. at 1403 (citing *Strickland*, 466 U.S. at 690). "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" *Id.* (citing *Strickland*, 466 U.S. at 688).

Further, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. *Id.*

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding' . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington*, 131 S.Ct. at 788 (citing *Strickland*, 466 U.S. at 687). As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision

reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

**c. Trial Counsel's Performance**

Here, Petitioner cannot meet the *Strickland* test for any of his claims. The Court will address each in turn.

**i.  Mr. Ross's Testimony**

With regard to Petitioner's claims that Mr. Ross, the co-defendant who was tried after Petitioner, did not testify, and defense counsel should have delayed the trial to procure his testimony, the Appellate Division specifically held that this argument is without merit because there was no information as to what testimony Mr. Ross would have even provided. There was no indication that Mr. Ross would have given favorable testimony for Petitioner. As such, the state court properly found that there was no prejudice to Petitioner. *See State v. Bethea*, No. A-3475-08T4, 2010 WL 5347700, at *2 (N.J. Super. Ct. App. Div. Oct. 28, 2010).

**ii.  Police Officers' Testimony**

Petitioner's claims about counsel's failures with regard to Detective McMillan's testimony are also without merit. As discussed by the PCR court, counsel specifically cross-examined the detective about the blood stains and it is clear that counsel's alleged "failure" to object to the testimony on direct was actually a tactical decision to focus his efforts on cross-examination and

closing argument instead. *Id.*   With regard to the bleach bottle, Petitioner himself acknowledges that counsel objected on relevancy grounds, but alleges that counsel should have "maintained" the objection after the court nonetheless decided to permit the testimony.   (Pet. ¶ 12 (6).)   In fact, a review of the transcript indicates that trial counsel objected to the bottle of bleaching detergent being admitted into evidence at the time of Detective McMillan's testimony because Petitioner's statement, which specifically discusses bleach, had not yet been entered into evidence.   (Pet'r's Br., Ex. T3[3], Trial Tr. 61:10-63:14, May 8, 2002).   After the sidebar with the court, the prosecutor specifically withdrew his request to enter the bleaching detergent bottle into evidence at that time. (*Id.*)   Therefore, it is clear that trial counsel's actions meet the *Strickland* test; he properly objected to the introduction of evidence and as a result of his objection, the prosecutor withdrew his request to enter it into evidence.

Nor was there any prejudice to Petitioner when counsel failed to object to the officer testifying that the Eckerd photo employee informed him that a "crackhead" picked up the pictures, since there was no evidence that Petitioner was the one who picked up the photos.

### iii.  Mr. Garrison's Testimony

Petitioner also alleges that counsel was ineffective for failing to request an adjournment or that a closed circuit television be set up when Detective Fox testified for the prosecution that they were unable to convince the victim, Mr. Garrison, to testify.   As the state courts held, there is no indication that counsel's representation fell below an objective standard of reasonableness.   The detective testified at length about the efforts he made to locate Mr. Garrison and secure his

---

[3] The citation Petitioner provides for this testimony is his Exhibit T2, but it appears that is incorrect.

appearance at trial.  (Pet'r's Br., Ex. T5[4], Trial Tr. 4:15-9:10, May 14, 2002).  Petitioner's hypotheticals about how counsel could have proceeded differently in no way demonstrate that counsel somehow fell below an objectively reasonable standard.  Counsel requested a *Clawans* charge, which would have permitted an adverse inference to be drawn from the non-production of a witness, *State v. Hickman*, 499 A.2d 231 (N.J. Super. Ct. App. Div. 1985), but the court denied his request.  A failure to request an adjournment and to request closed circuit testimony, which Petitioner himself acknowledges is unusual and "is sometimes used for juveniles in sex abuse cases," simply do not render counsel's performance objectively unreasonable.  Needless to say, the state courts' application of *Strickland* to these allegations was therefore reasonable.

Nor was it objectively unreasonable for counsel not to have "asked the Judge to consider all the factors in the case" when he was requesting the charge.  The trial court was clearly aware of its duty when determining whether to give a *Clawans* charge.  As found by the PCR court, counsel appropriately sought, and argued for, the charge and the fact that the trial court decided not to include it does not mean counsel was ineffective.  *State v. Bethea*, No. 01-06-0734 (N.J. Super Ct. Law Div. July 31, 2008).

Petitioner also argues that counsel "could have asked to speak to Det. Fox to determine if the defense wanted to call him as their witness."  (Pet. ¶ 12(9).)  However, by his own admission, "use of Det. Fox as a witness has positive and negative aspects…"  (*Id.*)  Clearly, the decision not to call Detective Fox was a strategic one; "precisely the sort of strategic trial decision that *Strickland* protects from second guessing."  *Henderson v. DiGuglielmo*, 138 F. Appx 463, 469 (3d Cir. 2005).  Petitioner's claim that the state court unreasonable applied *Strickland* on this basis

---

[4] The citation Petitioner provides for this testimony is his Exhibit T4, but it appears that is incorrect.

is without merit.

Finally, Petitioner alleges that counsel should have asked for a mistrial when the state court actually became aware that the victim would not testify because that information should have been given to the court and defense counsel at the outset.  (Pet. ¶ 12(10).)  Petitioner further alleges that "it could have been dealt with at that that point and not as a surprize [sic] as happened here. There was no mention of this problem by the Prosecutor during the initial status conference." (*Id.*)  While Petitioner is correct that there was no mention of the possibility that the victim would not testify during the initial conference on May 6, 2002, the very next day, May 7, 2002, the prosecutor specifically informed the court that they "[w]ere still attempting at this point to find Mr. Garrison.  We have [had] limited success in tracking him, but as of right now, I cannot represent to the [c]ourt that he will be attending this hearing."  (Pet'r's Br., Ex. T1, Trial Tr. 4:24–5:4, May 7, 2002.)  Counsel was not ineffective for failing to request a mistrial based on lack of knowledge that the victim might not testify.   It is without question that counsel was on notice that the victim might not testify even before trial began and there was certainly no surprise at the last minute.   Counsel's failure to move for a mistrial on this basis was not objectively unreasonable.

## 2.  Confrontation Clause (Ground Two)

In the second ground of his Petition, Petitioner argues the following:

> The only information from Mr. Garrison is a statement made to the police and given to the Court via testimony of that report.  (T3 pages 17-35)  The only way to truly confront a witness is to have that person appear in court to testify and be cross-examined.   The Judge denied Mr. Bethea the exercise of this right by not granting a *Clawans* Charge or making some other adjustment to the trial process.

(Pet. ¶ 12(2)(d).)[5]

---

[5] In his Petition, Petitioner states that he did not raise this ground in state court.  (Pet. ¶ 12(2).) However, the court is permitted to deny unexhausted habeas claims on the merits.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."   U.S. Const. amend VI.   This guarantee applies to both federal and state prosecutions.   *See Pointer v. Texas*, 380 U.S. 400 (1965).   "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."   *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (citations and internal quotation marks omitted)

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Sixth Amendment's Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant has had a prior opportunity for cross-examination."   *Id.* at 53–54.   As stated by the Third Circuit, a Confrontation Clause inquiry under *Crawford* is two-fold: "[f]irst, a court should determine whether the contested statement by an out-of-court declarant qualifies as testimonial....Second, the court should apply the appropriate safeguard. If the absent witness's statement is testimonial, then the Confrontation Clause requires unavailability and a prior opportunity for cross-examination. If the statement is nontestimonial, then admissibility is governed solely by the rules of evidence."   *United States v. Berrios*, 676 F.3d 118, 127 (3d Cir. 2012) (internal citations and

State"); *see also Carrascosa v. McGuire*, 520 F.3d 249, 255, n. 10 (3d Cir. 2008) ("There is, however, a difference between granting an unexhausted habeas claim on the merits and denying such a claim on the merits, as recognized by the plain language of section 2254(b)(2)....Denying an unexhausted claim on the merits is consistent with the statute"); *Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of Taylor's claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) ("We would permit Bronshtein to attempt on remand to establish a reason to excuse his procedural default, but we find it unnecessary to do so because it is apparent that the claims in question lack merit. Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here.").

quotations omitted).

Before (and after) *Crawford*, the Supreme Court had held that Confrontation Clause errors are subject to a harmless error analysis. *See Van Arsdall*, 475 U.S. at 680–81 (rejecting argument that Confrontation Clause violation is not subject to harmless error analysis); *Harrington v. California*, 395 U.S. 250 (1969) (holding that admission of confessions of the non-testifying co-defendants violated the Confrontation Clause, but was harmless error); *Wright v. Vaughn*, 473 F.3d 85, 93 (3d Cir. 2006) ("Evidentiary rulings in violation of the Confrontation Clause are subject to harmless error analysis.").

Here, it is clear that though the testifying officers acknowledged that Mr. Garrison had come to the police station and given a statement, the statement itself was not admitted into evidence during the trial.   In fact, each time the testifying police officers referenced Mr. Garrison's statement to police, the prosecution and the court reminded the officers that they should not provide any information as to the substance of the statement.   (Pet'r's Br., Ex. T3, Trial Tr. 68:2-5; 74:13-15; 76:13-15, May 8, 2002).   However, the Court does note that during the direct examination of one of the police officers, the prosecutor asked "Now, at the conclusion of taking the statement from Mr. Garrison, were any of the charges dismissed?" and the officer answered that the charges were not.   (Pet'r's Br., Ex. T3, Trial Tr. 75:19-22, May 8, 2002).

Even if this Court were to find that allowing such testimony was a violation of Petitioner's rights under the Confrontation Clause, as discussed above, such a finding is subject to the harmless error test. *See Van Arsdall*, 475 U.S. at 680–81.   In *Brecht v. Abrahamson*, the Supreme Court addressed the issue of harmless error in the context of collateral review and determined that "habeas petitioners ... are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"   507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)

(citation omitted).   The test is "whether the error had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (internal citations and quotations omitted).

Here, it is clear that the testimony by the officer that the charges were not dropped against Petitioner after the officer's interview with the victim, was not prejudicial and did not have a substantial effect on the proceeding.[6]   Petitioner had already given a statement wherein he placed himself at the scene of the crime and described in great detail what occurred at the apartment, including his involvement.   In addition, there was photographic evidence of Petitioner participating in the crimes.   None of that evidence was in any way connected to Mr. Garrison's statement to the police.   The only implication that could have possibly arisen from the officer's testimony is that Mr. Garrison's statement did not in some way exonerate Petitioner.   However, Petitioner had already implicated himself in the crimes through his confession and the pictures he took.   For these reasons, the Court finds that even if the limited testimony from the officers about the victim's statement violated Petitioner's Confrontation Clause rights, said violation was harmless error.   *Virgin Islands v. Lake*, 378 F. App'x 245, 247 (3d Cir. 2010).   Petitioner is not entitled to habeas relief on this ground.

### 3.   *Clawans* Charge (Ground Three)

In his third ground for relief, Petitioner argues that it was a violation of his Fourteenth Amendment Due Process rights when the trial court declined to include a *Clawans* charge in the jury instructions.

Under *Clawans*, for the jury to be charged on the adverse inference permitted to be drawn from the non-production of a witness, it must appear that: (1) that the uncalled witness is peculiarly within the control or power of only the one party, or that there is a special relationship between

---

[6] In fact, Petitioner's trial counsel did not even object to this question.

the party and the witness or the party has superior knowledge of the identity of the witness or of the testimony the witness might be expected to give; (2) that the witness is available to that party both practically and physically; (3) that the testimony of the uncalled witness will elucidate relevant and critical facts in issue, and (4) that such testimony appears to be superior to that already utilized in respect to the fact to be proven.   *State v. Hickman*, 499 A.2d 231, 234 (N.J. Super. Ct. App. Div. 1985).

Petitioner raised the issue of the denial of the *Clawans* charge on direct appeal.   The Appellate Division found that Mr. Garrison was not within the State's power to produce:

> In Point II, defendant argued that the trial judge erred by refusing to instruct the jury about the State's failure to produce Garrison as a witness.   Defendant claimed that the State did not sufficiently establish Garrison's "unavailability" and that defense counsel should have been permitted to comment on Garrison's absence.
>
> The record reflects that on Tuesday, May 7, 2002, immediately before a jury was impaneled, the prosecutor informed the court and counsel that they "[w]ere still attempting at this point to find Mr. Garrison.   We have [had] limited success in tracking him, but as of right now, I cannot represent to the [c]ourt that he will be attending this hearing."   As a result, in his opening statement, the prosecutor told the jury that he could not "guarantee" they would hear from Garrison "because I don't know.   We're trying."   On Wednesday, May 8, the prosecutor advised the court and defense counsel that he still had "a chance of producing Mr. Garrison" to testify by the following Tuesday, and asked for that chance to produce him, saying that if he could not do so by that time he would have a detective testify about the efforts to locate Garrison.   Defense counsel responded that the State had known for a long time that Garrison was a reluctant witness and objected to any continuance for that purpose.   The trial judge overruled defendant's objection.
>
> On Tuesday, May 14, the prosecutor announced that the State would rest but that he also brought Detective Fox to testify about the State's efforts to locate Garrison "in the event the defense wants to make a *Clawans* argument."   Outside the presence of the jury, Detective Fox testified as to his efforts to locate and convince Garrison to testify.   Garrison was apparently in Maryland and, despite numerous telephone calls and other communications through Garrison's sister in Maryland, Fox was unable to secure Garrison's appearance at trial.
>
> At the charge conference, defense counsel requested a *Clawans* charge, claiming that "even though the [S]tate has made diligent efforts to try to get Mr. Garrison

here over the past couple weeks," the trial had been scheduled for a long time and the State could have made "greater efforts" to secure his appearance.

*Clawans* holds that there are certain circumstances where a party's failure to produce a witness at trial will allow for an instruction to the jury that it could infer that this failure was due to the party's fear that the witness's testimony would be unfavorable to the non-producing party's case.   To obtain such a jury instruction, it "must appear that the person was within the power of the party to produce and that his testimony would have been superior to that already utilized in respect to the fact to be proved." *Id.* at 171.   As we said in *State v. Hickman*, 204 N.J. Super. 409, 414 (App. Div. 1985), the power to call a witness to testify requires a finding that the witness is "available to that party both practically and physically."   Here, the prosecution was desirous of having Garrison's testimony and made numerous efforts to contact him and convince him to testify.   Considering Garrison's lack of cooperation and unwillingness to return to this jurisdiction, it could hardly be said that he was within the State's "peculiar … control or power."   Because the circumstances testified to by Detective Fox demonstrated that Garrison was not within the State's power to produce, we find no error in the trial judge's refusal to give a *Clawans* charge.

*State v. Bethea*, No. A-6547-01T3 (N.J. Super. Ct. App. Div. May 13, 2004).

Generally, a jury charge (or lack of one) does not merit federal habeas relief even if the instruction, as given, is inconsistent with state law.   A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions ... must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997); *cf. Henderson v. Kibbe*, 431 U.S. 145, 155 (1977) ("An omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law").   *See also Cox v. Warren*, Civil No. 11–7132, 2013 WL 6022520, at *9 (D.N.J. Nov. 13, 2013).

In this case, Petitioner fails to show that the trial court misapplied state law.   Moreover, Petitioner fails to indicate how the trial court's failure to give a *Clawans* charge stripped Petitioner of a defense he wished to present.   Rather, Petitioner merely argues that the state court failed to properly consider all the relevant factors when deciding not to give the charge, however that is

insufficient to warrant federal habeas relief.   Thus, this Court finds that the omission of a *Clawans* charge did not offend the protections ensuing from the Due Process Clause, and this claim is denied accordingly.

**4.   Sentencing (Ground Four)**

In his final ground for relief, Petitioner argues that the state court improperly sentenced him to a term of twenty-five years on the kidnapping charge, while his co-defendant only received a sentence of fifteen years on the same charge.   Specifically, Petitioner argues that the judge gave Petitioner a more severe sentence because he believed Petitioner had a financial motive for the kidnapping.[7]

Absent a claim that a sentence constitutes cruel and unusual punishment prohibited by the eighth amendment, or that it is arbitrary or otherwise in violation of due process, the legality and length of a sentence are questions of state law over which this Court has no jurisdiction under § 2254.   *See Chapman v. United States*, 500 U.S. 453, 465, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (holding that under federal law, "the court may impose ... whatever punishment is authorized by statute for [an] offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment").   Petitioner's claim that his sentence is disproportionate to that of his co-defendant is resolved by *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), where the Supreme Court observed that the eighth amendment's gross disproportionality principle "reserves a constitutional violation for only the extraordinary case."   *Id.* at 77.   This is not such a case, particularly where Petitioner's co-defendant pled guilty, accepting responsibility for his crimes.   Habeas relief is denied on this claim.

---

[7] As with his second ground, it appears that this issue was not raised in state court.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

## IV.  CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue. An appropriate Order follows.


Dated:

Peter G. Sheridan, U.S.D.J.